UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| CLIFFTON RAY CHRISTOFFERSON, | Case No.: 2:19-cv-00087-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent, | |

Before the Court is Petitioner Cliffton Ray Christofferson's's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's denial of his application for Social Security Disability Benefits for lack of disability. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On June 23, 2016, Cliffton Ray Christofferson ("Petitioner") filed a (1) Title II application for a period of disability and disability insurance benefits, and (2) Title XVI application for supplemental security income, alleging disability beginning July 1, 2011 (later amended to January 1, 2015). These claims were initially denied on September 20, 2016 and, again, on reconsideration on January 23, 2017. On February 23, 2017, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On January 24, 2018, ALJ Marie Palachuk held a hearing in Spokane, Washington, at which time Petitioner, represented by attorney Mark B. Jones, appeared and testified. Dr. John F. Kwock, M.D., an impartial medical expert, and Daniel R. McKinney, Sr., an impartial vocational expert, also appeared and testified at the same January 24, 2018 hearing.

MEMORANDUM DECISION AND ORDER - 1

On March 23, 2018, the ALJ issued a Decision denying Petitioner's claim, finding that he was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council and, on January 14, 2019, the Appeals Council denied Petitioner's Request for Review, making the ALJ's Decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner filed the instant action on March 11, 2019, arguing that the ALJs disability determination was erroneous and contrary to applicable standards of law. *See generally* Compl./Pet. for Review (Dkt. 1). In particular, Petitioner claims that (1) the ALJ failed to properly consider his chronic pain at step two of the sequential process; and (2) the ALJ erred in discounting his testimony. *See* Pet.'s Brief, pp. 3-7 (Dkt. 15). Petitioner therefore requests that the Court either reverse the ALJ's Decision and find that he is entitled to disability benefits or, alternatively, remand the case for further proceedings. *See id.* at p. 7; *see also* Compl./Pet. for Review, p. 2 (Dkt. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The standard is fluid and

nuanced, requiring more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the entire record to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

As to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed or remanded for legal error. *See Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, to be clear, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§

**MEMORANDUM DECISION AND ORDER - 3**

404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since July 1, 2015, the amended alleged onset date." (AR 15).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following

**MEMORANDUM DECISION AND ORDER - 4**

medically determinable impairments: "mild thoraco-lumbar scoliosis, degenerative disc disease and degenerative joint disease of the cervical and lumbar spine."  (AR 16).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *See id*.  Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  *See* (AR 16-17).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  *See* 20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  On this point, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch.  The claimant can never climb ladders, ropes, or scaffolds, can never crawl, and should avoid more than moderate exposure to hazards.

(AR 24).

**MEMORANDUM DECISION AND ORDER - 5**

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  Here, the ALJ found that Petitioner "is unable to perform any past relevant work," but that, considering Petitioner's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Petitioner can perform, including product assembler, electronics worker, and warehouse checker.  *See* (AR 22-23).  Thus, the ALJ concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from January 1, 2015, through the date of this decision."  (AR 23) (internal citation omitted).

**B.   Analysis**

Petitioner takes issue with two aspects of the ALJ's decision.  First, Petitioner contends that the ALJ committed error by failing to consider his chronic pain as a severe impairment at step two of the sequential process.  Second, Petitioner argues that the ALJ erred by not providing specific, clear, and convincing reasons for discrediting his symptoms of pain caused by his claimed impairments.  Each argument is addressed below.

      1.   <u>Any Error by the ALJ at Step Two of the Sequential Process Was Harmless</u>

As noted, the ALJ found that Petitioner has the following severe impairments:  mild thoraco-lumbar scoliosis, degenerative disc disease, and degenerative joint disease of the cervical and lumbar spine.  *See* (AR 16).  In his July 12, 2016 "Disability Report-Adult," under the "Medical Conditions" section, Petitioner was instructed to "[l]ist all of the physical or mental conditions . . . that limit [his] ability to work."  (AR 232).  Although Petitioner did not list a distinct type of "chronic pain," he now asserts that the ALJ erred at step two of the sequential

**MEMORANDUM DECISION AND ORDER - 6**

process because the ALJ failed to consider chronic pain as one of his severe impairments. *See* Pet.'s Brief, pp. 3-4 (Dkt. 15) ("The ALJ failed to list the Petitioner's pain as a severe impairment, and makes no specific finding that his pain is not a severe impairment in the decision.").[1]

The United States Court of Appeals for the Ninth Circuit has held that, when an ALJ resolves step two in a claimant's favor – i.e., finding that a severe impairment exists – the ALJ's failure to identify additional severe impairments is harmless, especially if the ALJ considered the impairment later in the sequential process. *See Pouppirt v. Comm'r of Soc. Sec.*, 609 Fed. Appx. 440, 441 (9th Cir. 2015); *see also Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Accordingly, because the ALJ resolved step two in Petitioner's favor and discussed Petitioner's pain complaints as symptoms of his recognized impairments later in the sequential process (*see* (AR 17-20)), the Court finds that any error by the ALJ in failing to identify another alleged impairment (chronic pain itself) as severe is harmless. *See Crispin v. Colvin*, 2016 WL 5420569, at *3 (D. Idaho 2016).

    2.    <u>The ALJ Did Not Err in Questioning Petitioner's Credibility</u>

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, her determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for

---

[1] In response to the Disability Report-Adult's question concerning medical conditions, Petitioner stated: "back and shoulder pain," "shoulders – knot in [right] shoulder," "can only lay on back at night – painful," "hands go numb at night and daytime periodically," "limited strength in left arm," and "lower back – very stiff." (AR 232).

**MEMORANDUM DECISION AND ORDER - 7**

truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 96-7p. In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

In rejecting a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *See Holohan*, 246 F.3d at 1208 (citing *Reddick*, 157 F.3d at 722). The reasons given for rejecting a claimant's testimony must be supported by substantial evidence in the record. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is such substantial evidence, the Court will not engage in second-guessing. *See Thomas*, 278 F.3d at 959. Even when the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Here, Petitioner alleges disabling limitations resulting from his back and shoulder pain, stating within his September 14, 2016 "Function Report – Adult":

- "I have to return to a comfortable chair after about an hour of any activity, for about an hour before becoming active again, I can do this up to 3 times a day. Certain activities I cannot do and all is done cautiously." (AR 268).

- "I wake up sore and stiff moving straight to my chair for at least an hour while I do sitting stretches. From there, I do as much as I can in increments that I can handle, returning to my chair as needed. Some days not much." (AR 269).

- "I don't like to sleep on my back but it is the only position I can lay in comfort." *Id*.

**MEMORANDUM DECISION AND ORDER - 8**

- "On bad days, I need help getting shoes on and off."  (AR 270).

- "I try to avoid mowers, but I try to cook and keep the house clean.  Some days ok, others I cannot. . . .  Regardless of task I tackle it in time increments that I can handle and then come back to it. . . .  If it needs to be done soon, I need help. . . . Pain in my shoulders and lower back keeps me from doing many chores and slows all my efforts."  (AR 270-71).

- "I used to enjoy skiing, snowboarding, hiking, photography, rock hunting, golfing, bocce, camping, mushroom hunting, and other such activities. . . .  I almost never get to do any of these things anymore. . . .  Now I read and draw and watch TV."  (AR 271).

- His conditions affect lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing tasks.  *See* (AR 273).

- "On good days I can be on my feet for up to an hour without help and carefully lift objects less than 20 pounds, then I must sit and stretch for at least as long.  I can do this up to 3 times a day."  *Id*.

- "I will admit that constant pain will strain my mood and outlook if not mindful."  (AR 274).

He went on to more-or-less confirm as much during the January 24, 2018 hearing, testifying in response to questions from his attorney as follows:

> Q:   So, I want to talk to you about what's going on medically.  Originally you put down apparently sometime in 2011 is the onset date.  We've now amended that up to January of 2015.  And I just want to ask you since 2015 what is it that's keeping you from being able to work?
>
> A:   Well, pain basically.  I do work about two hours a week is probably what I average.  I clean drains at a local laundromat.  If I do anything, virtually anything for more than an hour I'm really no good the next day or possibly following days.  So, I kind of – my wife manages the laundromat so I'm able to get in there and do that.  But the rest of the time, yeah, I just have to be very, very careful what I do.  If I make the wrong move – you know, the next day or possibly days are no good for me.
>
> Q:   Where are you experiencing the pain?
>
> A:   Well, the really debilitating usually is – I mean, what really keeps me from moving is the lower back.  However, my shoulders can be equally bad but I'm able to still get up and I have – I've lost a lot of strength in my right arm.  And my left arm is frequently numb.  But – you know, I can still get

**MEMORANDUM DECISION AND ORDER - 9**

>   up and do a few things. It's the lower back that usually keeps me grounded, I guess.

Q: Okay. It looks like back in like 2000 to 2006 and even later up till about 2011, you had regular and fairly good earnings for Idaho. What happened? What kept you from being able to work after that point?

A: I – at that point, I couldn't move for almost three months. I was on a cane. I don't know, my back just went out at that time. And it's not the first time. It's – you know, it – I'm 6'5" I don't know if that – I did work very hard. I spend my first several years at Les Schwab, then I went on to do construction. And I was a very active person. But I suffered from back pain my whole life. And it would go out and I'd see the doctor. And I would usually get steroids and muscle relaxers and pain killers, and I'd get back to work. And that's the way I did it for years until this last time and I just couldn't – it took a long time and a lot of physical therapy. And honestly without the physical therapy I'm not sure how I would be doing right now. It's certainly made a difference and I do those stretches every morning to this day. And – you know, but – yeah, I'm not capable of working. I haven't been since then other than very moderately. And when I'm capable, I do.

. . . .

Q: And so, when the doctor described you being – he felt you were able to stand and walk I think it was up to six hours, sit up to six hours of an eight-hour day with normal breaks. Is that something you could do?

A: Probably one day I could probably do it. But after standing for six hours one day, I might be able to do it a second day. And there's even a small possibility I could probably do it a third day, but I don't think I honestly don't think I would be capable of doing that. I would need extended breaks. I would have to have an opportunity to sit and stretch and – you know, even then I can wake – I could wake up tomorrow and not be able to do virtually anything. It really is dependent on the day. I don't know how else to say it.

Q: So, what about sitting for six hours out of an eight-hour day?

A: That would be even harder than standing. Sitting, I have to get up and stretch every so often. I just have to.

. . . .

Q: Okay. So if – anything that involves sitting for more than four or six hours I would assume then you're going to have issues with the back?

A: Yes, absolutely.

**MEMORANDUM DECISION AND ORDER - 10**

> Q: All right. And then as far as lifting and carrying – you know, if you pick up a 20-pound or 25-pound bag of dog food, are you able to do that? Does it hurt?
>
> A: I can do it. I have done it. But I have to be just very, very careful. And it's not something I would have to try and repeat – you know, over and over. But I'm capable of doing it. It definitely can hurt if I do it wrong. It doesn't have to hurt. But it requires just deliberate motions and thought, I guess.

(AR 40-45).

The ALJ concluded that Petitioner's medically determinable impairments could reasonably cause the alleged symptoms; however, the ALJ said that Petitioner's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 18). As described to follow, the ALJ's justification in this regard amounts to clear and convincing reasons for questioning Petitioner's credibility.

First, in his challenge to the ALJ's view of his credibility, Petitioner relies on instances in the record where his symptomology is confirmed before reframing the issue as the ALJ's failure to recognize as much. *See, e.g.*, Pet.'s Brief, p. 6 (Dkt. 15) ("The findings made by the ALJ regarding the Petitioner's pain, is not consistent with the medical record, and consequently not supported by the medical record. Even the medical expert who testified at the hearing indicated that the Petitioner had a basis for complaining of radicular pain based on the MRI contained in the record. . . . . The record, therefore, consists of the Petitioner's initial filing, complaining primarily of back and shoulder pain, imaging studies in the record which the medical expert testified would be a basis for the Petitioner's complaints of chronic pain, and the Petitioner's treating physician's opinion letter, however inartfully written . . . . The Petitioner's testimony throughout the record and that hearing is entirely consistent with the imaging studies, the

**MEMORANDUM DECISION AND ORDER - 11**

treatment records, and the medical expert who appeared and testified at the hearing.") (internal citations omitted).

However, the ALJ did not reject allegations that Petitioner suffers from certain impairments, or that such impairments are painful and impact his ability to work. *See* (AR 18) (ALJ acknowledging that Petitioner had significant lower back pain and other conditions) (citing (AR 622-25)). Indeed, the ALJ expressly concluded that Petitioner suffers from mild thoraco-lumbar scoliosis, degenerative disc disease, and degenerative joint disease of the cervical and lumbar spine, and that such impairments are severe. *See supra* (citing (AR 16)).

The relevant part of the ALJ's decision on this issue is that the ALJ questioned the *extent* to which these recognized impairments and related symptoms prevented Petitioner from working at all. Significantly, even in doing so the ALJ specifically accounted for Petitioner's limitations during the fourth step of the sequential process (RFC analysis). *See* (AR 17) (Petitioner has RFC to perform light work, except that Petitioner can only occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; can never climb ladders, ropes, or scaffolds; can never crawl; and should avoid more than moderate exposure to hazards); *see also* (AR 20) ("The undersigned has considered the claimant's activities and treatment, and has included some limitations in the residual functional capacity to account for his pain, such as . . . ."). Therefore, when Petitioner's arguments rely upon the existence of certain limiting impairments or symptoms, the arguments are inapposite to the critical issue because the ALJ already acknowledged such limitations and incorporated them in the RFC to accommodate Petitioner's corresponding symptoms. The question remaining is not whether such limitations/symptom exist, but whether Petitioner is able to work even with such limitations.

Second, the ALJ explained that despite Petitioner's overall limitations, his alleged pain was more-or-less reasonably controlled. *See* (AR 18-19); *see also, e.g.*, *Celaya v. Halter*, 332

**MEMORANDUM DECISION AND ORDER - 12**

F.3d 1177, 1181 (9th Cir. 2003) (finding ALJ's reasons for his credibility determination were "clear and convincing, sufficiently specific, and supported by substantial evidence in the record," in part, because "the ALJ reasonably noted that the underlying complaints upon which her reports of pain were predicated had come under control."). For example:

- In June 2015, Petitioner said his back pain was long-standing in nature, beginning 21 years ago, was relieved by medication, and "fairly controlled." (AR 576).

- In September 2015, Petitioner noted that his symptoms are chronic and fairly controlled, and that relieving factors include medication. *See* (AR 567).

- In March 2016, Petitioner presented with chronic pain, but stated that his pain is "well controlled" and "3 on a 1-10 scale today." (AR 555) (noting that Petitioner felt sick on days he did not have pain medication, but is "back at baseline.").

- In June 2016, Petitioner reported that he had not used pain medications for the four or five days leading up to the appointment and that he was "doing okay." (AR 551).

- In August 2016, Petitioner indicated that his "symptoms are chronic and are fairly controlled." (AR 544, 613); *see also* (AR 607) (same for November 2016).

- In March 2017, Petitioner's symptoms "reported as being moderate" and "has had some improvement in pain" with medication. (AR 584).

- In November 2017, Petitioner's pain listed as 3/10 and described as "mild," with provider "giving encouragement to exercise." (AR 632-34).

- In December 2017, Petitioner considered his back pain to be "fluctuating," "occurs intermittently," and is "relieved by pain meds/drugs." (AR 626).

Additionally, the ALJ observed that Petitioner was maintained on essentially the same dosages of medications throughout the relevant time period, was never referred to a specialist, and never required an emergency room visit or hospitalization. *See* (AR 20).

Third, the ALJ concluded that Petitioner's daily activities were inconsistent with his allegations of disabling symptoms and limitations, pointing out:

> The claimant alleged activities of daily living that were restricted by his conditions, such as needing help putting on and taking off shoes, and difficulty in cooking and cleaning.

**MEMORANDUM DECISION AND ORDER - 13**

>He also indicated that he can only sustain an hour of any activity at a time before he would have to rest for an hour, and that he can repeat this cycle a total of three times in a day. Additionally, the claimant testified that he has raised three children while his wife works. The claimant also indicated, in his function report, that he feeds and cares for two dogs and two cats, and prepares meals daily, cleans the house on some days, attempts to go outside every day, drives a car, and goes shopping in stores one to two times per week. The claimant seems to stay busy. Additionally the claimant testified that he engages in work as a handyman at the Laundromat his wife manages, for an average of two hours a week; though a review of the paystubs that were submitted on the claimant's behalf indicate that the claimant has, on occasion, worked up to approximately ten hours per week. This amount of work would seem to be inconsistent with such restrictive limitations on his amount of exertion in a given day or week. The undersigned also notes that the documentary medical evidence does not reveal any muscle weakness or atrophy indicating the claimant has remained active.

(AR 19-20).

Appropriately then, the ALJ accepted Petitioner's complaints that he suffers from certain impairments or associated pain. But, also appropriately, in considering and discussing Petitioner's daily activities, the ALJ's focus was on Petitioner's claim that he cannot work *because* those impairments allegedly limit his ability to work altogether. *See, e.g.*, *Madrid v. Colvin*, 2016 WL 1161987, at *10, n.8 (N.D. Cal. 2016) (the "Ninth Circuit has held that 'the adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.' As discussed herein, the ALJ did not reject Plaintiff's allegations that she suffers hand pain, but rather evaluated record evidence regarding Plaintiff's alleged diminished dexterity.") (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991)); *see also Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("Even where those activities suggest some difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of totally debilitating impairment.").

Fourth, as to the objective medical evidence, the ALJ found that, "while the claimant's ability to work is limited, the medical evidence of record does not support that he is limited to

**MEMORANDUM DECISION AND ORDER - 14**

the extent alleged." (AR 21).  On this point, the ALJ referenced the very few musculoskeletal examinations performed on Petitioner during the relevant time period, and that those in 2016 and 2017 resulted in generally mild findings.  *See* (AR 19) ("The claimant was observed to be in no acute distress.  The medical evidence of record does not reveal any other abnormal findings on examination."); *see also* (AR 20) ("In addition, many of these progress notes do not contain any findings from a musculoskeletal examination relating to the claimant's alleged impairments, indicating the claimant was not complaining of any significant musculoskeletal problems."). "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis." *Burch*, 400 F.3d at 681.

Moreover, between the testimony of Dr. Kwock (the impartial medical expert who testified at the January 24, 2018 hearing) and the testimony of Dr. Jennifer Hudson (Petitioner's treating physician), there are no contradictory opinions of *greater* limitations (than those reflected in the ALJ's RFC analysis) by any treating, examining, or testifying doctor present in the medical evidence of record.  *See* (AR21).  In short, the medical record's descriptions of Petitioner's medically-supported impairments/limitations is disconnected from Petitioner's claimed inability to work.

Together, these reasons contain clear and convincing explanations as to why the ALJ found Petitioner's testimony not entirely credible. Remember here that the Court's role is not to decide whether Petitioner is disabled under the applicable rules and regulations or whether he suffers from chronic pain.  On those points, the Court agrees that Petitioner identifies (or at least suggests) conflicting evidence in support of his position.  Even though conflicting evidence may not have been given the weight by the ALJ that Petitioner would have preferred, the ALJ's decision to doubt Petitioner's credibility in denying disability benefits contains clear and convincing reasons for doing so.  The Court must use that measuring stick.  Accordingly, as

**MEMORANDUM DECISION AND ORDER - 15**

required by controlling law, the ALJ will not be second-guessed as to such conclusions on the record here against the justifications provided. *See Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted).

## IV.  CONCLUSION

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549. The ALJ has provided reasonable and rational support for her well-formed conclusions, even if such evidence is susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence. Therefore, the Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety, with prejudice.

DATED: September 30, 2020

Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 16**